# UNITED STATES DISTRICT COURT
for the
Eastern District of North Carolina

FILED
JAN 0 7 2022
PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
CELLULAR TELEPHONE OF ANTHONY JERROD )
TEMONEY STORED AT THE NEW HANOVER )
COUNTY JAIL )

Case No. 7:22-mj-1003-RJ

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____Eastern_____ District of _____North Carolina_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☐ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution and Poss. with Intent to Distribute Controlled Substances |
| 21 U.S.C. § 846 | Conspiracy to Distrib. and Poss. with Intent to Distribute Controlled Substances |

The application is based on these facts:
See attached affidavit.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

James D. Byers, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
__James D Byers_____ *(specify reliable electronic means)*.

Date: __January 7 2022__
~~01/04/2021~~

_____
*Judge's signature*

City and state: Wilmington, North Carolina

Robert B. Jones Jr., U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION TO OBTAIN A SEARCH WARRANT FOR THE BLACK COLORED CELLULAR TELEPHONE OF ANTHONY JERROD TEMONEY IN A BLACK COLORED CASE STORED WITH THE PERSONAL PROPERTY OF ANTHONY JERROD TEMONEY AT THE NEW HANOVER COUNTY DETENTION FACILITY | Magistrate Case No. 7:22-mj-1003-RJ<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Special Agent James D. Byers, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION

1. I make this affidavit in support of an application pursuant to Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the contents of a cellular telephone (the "TARGET TELEPHONE") which was in the possession of ANTHONY JERROD TEMONEY (hereinafter, "TEMONEY") at the time of his arrest on or about December 13, 2021.

2. As stated below, the contents of the TARGET TELEPHONE will likely help investigators develop further details about TEMONEY's drug trafficking activity by assisting investigators in identifying TEMONEY's drug suppliers, drug customers, and other yet unidentified co-conspirators.

1

3. Based on information obtained through the course of this investigation, I know the TARGET TELEPHONE belonged to TEMONEY, who was involved in the distribution of controlled substances including cocaine base (crack) in the Eastern District of North Carolina from at least 2014 until his arrest on December 13, 2021.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21 U.S.C. §§ 841(a) and 846 and Title 18 U.S.C. §§ 922 have been committed by TEMONEY, who used the TARGET TELEPHONE. There is also probable cause to search the TARGET TELEPHONE described in Attachment A for evidence, instrumentalities, contraband, or fruits of these crimes as further described in Attachment B.

5. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. See 18 U.S.C. § 2711(3)(A)(i).

6. The TARGET TELEPHONE is described herein and in Attachment A, and the information to be seized is described herein and in Attachment B.

## AGENT BACKGROUND

7. I have been employed by the FBI since 2015. I have been a Special Agent with the FBI since July 2019 and served as an FBI Intelligence Analyst from January 2015 to July 2019. I received extensive law enforcement training at the FBI Academy in Quantico, Virginia. I am currently assigned to the FBI's Wilmington Resident Agency (sub-office of the FBI's Charlotte Field Office) where I am a member of the

Safe Streets and Gang Unit Task Force. As an FBI Intelligence Analyst, I was assigned to the FBI's Philadelphia Field office where I worked international terrorism and computer intrusion matters.

8. In these positions, I have been responsible for investigating various violations of federal law, including but not limited to violations of the Controlled Substances Act. I have experience and received training in federal law enforcement investigations. I have participated in the execution of numerous search and arrest warrants involving drug and firearms offenses and gathered drug, firearms and non-firearms related evidence. Additionally, I have participated in interviews of witnesses and conducted surveillance of investigation targets. It is within my duties as a Special Agent to investigate complex drug trafficking conspiracy cases using the electronic interception of telephonic communications and the use of vehicular GPS systems to supplement physical surveillance. I have directed and participated in investigations of criminal violations of the Controlled Substances Act, including, but not limited to, Title 21, United States Code, Sections 841, 843, 846, and Title 18, United States Code, Sections 922, and 924; as well as the aiding and abetting the above offenses, in violation of Title 18, United States Code, Section 2.

9. As a Special Agent, I have participated in numerous investigations of drug trafficking offenses related to heroin, cocaine, fentanyl, and other illegal narcotics. I have conducted or participated in surveillance operations, controlled purchases of illegal narcotics, the execution of search and arrest warrants, debriefings of

3

informants, analyzing pen registers, and monitoring court-authorized wire intercepts.

10. Based upon your affiant's training, experience, and participation in investigations of suspects involved with trafficking large amounts of heroin, cocaine, fentanyl, and/or other controlled substances, your affiant knows:

    a. Drug traffickers frequently use cellular telephones to conduct their drug trafficking activities. Drug traffickers frequently use cellular telephones to make and receive phone calls and send and receive messages via "Short Message Service" ("SMS") or "Multimedia Messaging Service" ("MMS"), which are often referred to generically as "text messages", to communicate with their sources of supply of drugs and drug customers in order to negotiate and facilitate the purchase and sale of drugs.

    b. Drug traffickers commonly store contact information for other drug traffickers, drug suppliers, and drug customers on their cellular telephones.

    c. Drug traffickers commonly use mobile applications such as encrypted applications on their cellular telephones to communicate with their drug suppliers and customers.

    d. Drug traffickers commonly take and store photographs of themselves, their products, and their co-conspirators and these are often stored on their cellular telephones.

    e. Drug traffickers frequently keep records or logs to track the amount of money owed to them by their drug customers and these are sometimes stored on their cellular telephones.

4

f. Drug traffickers commonly carry firearms for protection and photographs of these firearms or communications arranging the purchase of these firearms are often stored on their cellular telephones.

g. Drug traffickers frequently change, drop, discontinue and/or use multiple cellular telephones to further compartmentalize their activity in an attempt to shield their illegal activity from law enforcement. Drug traffickers commonly employ these tactics to insulate themselves and protect their interest in the organization as well as the organization's interest.

11. Through this experience, I am familiar with drug traffickers' methods of operation, including techniques commonly used to distribute, store, and transport narcotics, as well as to collect and launder proceeds of their narcotics trafficking activities. Through my experience with the FBI as a special agent and working with other narcotics officers, I am also familiar with the coded language, or slang, narcotics buyers and sellers use to communicate related to drug transactions.

12. The facts in this affidavit come from my personal observations, my training and experience, my reviews of documents and prison telephone calls, analysis of telephone toll information, information provided by sources of information, and information obtained from other agents and witnesses. The affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

13. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21 U.S.C. §§ 841 and 846 and Title 18 U.S.C. §§ 922

5

(hereinafter referred to as "TARGET OFFENSES") have been committed, are being committed, and will be committed by TEMONEY. There is also probable cause to believe that the information described in Attachment B will constitute evidence of these criminal violations and will likely lead to the identification of TEMONEY's drug suppliers and customers and other yet unknown individuals who are engaged in the commission of these offenses.

**PROBABLE CAUSE**

14. In September 2020, FBI confidential human source 1 (CHS-1) told the FBI that TEMONEY sold cocaine base crack in Wilmington, NC and used cellular telephone number 910-352-0680. Your affiant deems CHS-1 to be reliable because information reported to the FBI by CHS-1 has been confirmed by consensual recordings, information received pursuant to subpoenas and search warrants, physical surveillance, and independent investigation, and no information reported to the FBI by CHS-1 has ever been proven false.

15. TEMONEY's criminal history includes prior convictions for felony PWISD cocaine (1995), felony PWISD cocaine (2004), felony possession of controlled substance in prison/jail premises (2008), felony PWISD cocaine (2008), felony PWISD cocaine (2011), felony PWISD cocaine (2014), and felony PWISD cocaine (2021).

16. On or about September 22, 2020, CHS-1 contacted TEMONEY on cellular telephone number 910-352-0680 to arrange a drug transaction. CHS-1 then met TEMONEY in Wilmington, NC and conducted a controlled purchase of a quantity of cocaine base (crack) from TEMONEY at the direction of law enforcement.

17. On or about December 7, 2020, CHS-1 contacted TEMONEY on cellular telephone number 910-352-0680 to arrange a drug transaction. CHS-1 then met TEMONEY in Wilmington, NC and conducted a controlled purchase of a quantity of cocaine base (crack) from TEMONEY at the direction of law enforcement.

18. On or about December 16, 2020, CHS-1 contacted TEMONEY on cellular telephone number 910-352-0680 to arrange a drug transaction. CHS-1 then met TEMONEY in Wilmington, NC and conducted a controlled purchase of a quantity of cocaine base (crack) from TEMONEY at the direction of law enforcement.

19. On or about January 7, 2021, CHS-1 contacted TEMONEY on cellular telephone number 910-352-0680 to arrange a drug transaction. CHS-1 then met TEMONEY in Wilmington, NC and conducted a controlled purchase of a quantity of cocaine base (crack) from TEMONEY at the direction of law enforcement.

20. From about January 14, 2021, through April 8, 2021, pursuant to Court authorization, the FBI intercepted the wire and electronic communications of Wilmington, NC-based drug trafficker TERRY WAYNE SHERMAN (hereinafter, "SHERMAN") over cellular telephone number 919-508-7035. During this period, the FBI intercepted telephone calls and text messages regarding drug transactions between SHERMAN and TEMONEY, who used cellular telephone number 910-352-0680.

21. On or about February 5, 2021, CHS-1 contacted TEMONEY on cellular telephone number 910-352-0680 to arrange a drug transaction. CHS-1 then met

7

TEMONEY in Wilmington, NC and conducted a controlled purchase of a quantity of cocaine base (crack) from TEMONEY at the direction of law enforcement.

22. During each of the aforementioned controlled purchases, audio/video recording devices were used, and TEMONEY was identified by law enforcement as the individual who sold CHS-1 the drugs during the controlled purchases.

23. On or about March 25, 2021, the Wilmington Police Department (WPD) executed a search warrant at the Wilmington, NC residence of TEMONEY and seized approximately 11 grams of cocaine base (crack) and several rounds of ammunition. TEMONEY was then arrested and charged with several drug related offenses.

24. On or about March 25, 2021, TEMONEY was released on a $20,000 secured bond.

25. In early April 2021, CHS-1 told the FBI that TEMONEY was once again selling cocaine base (crack) in Wilmington.

26. On or about May 13, 2021, TEMONEY plead guilty to a charge of PWISD cocaine from the March 25, 2021, search warrant and was sentenced to 18 months of probation.

27. On July 16, 2021, the FBI interviewed cooperating defendant 1 (CD-1). CD-1 said they provided TEMONEY with ounce quantities of cocaine base (crack) from 2020 through 2021. CD-1 also said TEMONEY had another cocaine supplier.

28. Information from CD-1 has previously been proven reliable by investigation, surveillance, search warrants, and court authorized intercepts of wire

8

and electronic communication. No information provided by CD-1 has been proven false.

29. In early November 2021, CHS-1 told the FBI that TEMONEY was still selling cocaine base (crack) in Wilmington, NC.

30. On November 17, 2021, a Federal arrest warrant was issued for TEMONEY in the United States District Court for the Eastern District of North Carolina for violations of 21 U.S.C. Section 846 and 21 U.S.C. Section 841(a)(1) as a result of the controlled drug purchases conducted from TEMONEY by the FBI.

31. On December 9, 2021, your affiant received information from the North Carolina Department of Public Safety that TEMONEY still used cellular telephone number 910-352-0680.

32. Your affiant is only aware of TEMONEY using one cellular telephone during the FBI's investigation into TEMONEY's drug trafficking activity and that telephone was assigned call number 910-352-0680.

33. On December 13, 2021, the FBI arrested TEMONEY in Wilmington, NC and then transported TEMONEY to the New Hanover County Detention Facility. At the time of his arrest, TEMONEY was in possession of the TARGET TELEPHONE which was then placed into storage with TEMONEY's other personal property at the New Hanover County Detention Facility.

34. On December 15, 2021, the FBI contacted the New Hanover County Detention Facility and was told the TARGET TELEPHONE was still in storage with TEMONEY's personal property at the New Hanover County Detention Facility.

According to an employee of the New Hanover County Sheriff's Office, the official description of the cellular telephone stored with TEMONEY's personal property at the New Hanover Detention Facility was "black phone with black case". The FBI then requested the New Hanover County Detention Facility place a "hold" on the TARGET TELEPHONE so the TARGET TELEPHONE would not be released before law enforcement was able to obtain a search warrant for the device.

35. Based upon your affiant's knowledge of TEMONEYs history as a drug trafficker, TEMONEY's use of a cellular telephone to arrange drug transactions with CHS-1, and intercepted calls and text messages between TEMONEY and SHERMAN, your affiant know that TEMONEY was a drug trafficker and that TEMONEY used a cellular telephone to facilitate drug transactions. Additionally, because your affiant only knew TEMONEY to use one cellular telephone and he used the same cellular telephone number during the entire investigation, your affiant believes it is likely that the TARGET TELEPHONE was used by TEMONEY to commit the target offenses. Based upon these facts, I believe there is probable cause to search the TARGET TELEPHONE described in Attachment A for evidence, instrumentalities, contraband, or fruits of these crimes as further described in Attachment B.

## TECHNICAL TERMS

36. Based on my training and experience, I use the following technical terms to convey the following meanings:

10

a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital Memory Cards: A digital memory card is a storage media to store recorded images, typically from a digital camera. Images can usually be retrieved by connecting the digital memory card to a separate reader.

37. Based on my training, experience, and research, I know that cellular telephone devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device and PDA. In my

11

training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

38. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

39. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

40. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

13

CLW

41. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

REMAINDER OF PAGE INTENTIONALLY BLANK.

## AUTHORIZATION REQUEST

42. Based on the evidence above, your affiant submits that there is probable cause to believe that the TARGET TELEPHONE may contain evidence, fruits and instrumentalities of violations of Title 21, United States Code, Section 841 and Title 18 United States Code, Section 922.

43. Therefore, your affiant respectfully requests that this Court issue a search warrant for the TARGET TELEPHONE more particularly described in Attachment A, and to authorize the seizure of the items described in Attachment B which constitute fruits, evidence and instrumentalities of violations of Title 21 U.S.C. §§ 841 and 846 and Title 18 U.S.C. §§ 922.

Respectfully submitted,

James D. Byers
Special Agent
Federal Bureau of Investigation

On this 7 day of January, 2021, James D. Byers, appeared before me via reliable electronic means, was placed under oath, and attested to the contents of this Affidavit.

ROBERT B. JONES, JR.
UNITED STATES MAGISTRATE JUDGE

15

## ATTACHMENT A

### Property to Be Searched

1. The black colored cellular telephone in a black colored case belonging to ANTHONY TEMONEY and stored with ANTHONY TEMONEY's personal property at the New Hanover County Detention Facility, located at 3950 Juvenile Center Rd, Castle Hayne, NC 28429.

## ATTACHMENT B

## Particular Things to be Seized

This warrant authorizes:

(i) the search of the property identified in Attachment A for only the following, and

(ii) authorizes the seizure of the items listed below only to the extent they constitute evidence of violations of Title 21, United States Code, Section 841 and Section 846, and Title 18, United States Code, Section 922, which were committed between 2014 and the present.

Subject to the foregoing, the items authorized to be seized include the following:

1. Any items, which tend to show ownership, dominion or control of the device, records of illegal drug activity, records of illegal firearms possession, documents, phone records, electronic phone records, photographs;

2. Any forms of communication, to include correspondence by text message, email, or mobile application pertaining to the sale and distribution of illegal narcotics or firearms;

3. Any files and the data within these files related to the possession, sale and distribution of illegal controlled substances or firearms;

4. Financial records and other records or documents reflecting narcotics-trafficking activity or the disposition of narcotics proceeds, including, but not limited to, currency, financial instruments, stocks, bonds, jewelry, precious metals; bank

17

CLW

Case 7:22-mj-01003-RJ    Document 1    Filed 01/07/22    Page 18 of 20

checks; cashier's checks and receipts for such checks, Western Union receipts, money orders, money order receipts, credit cards, credit card records, pre-paid credit cards, green dot cards and documents relating thereto; vehicle registrations; real estate records; income tax returns and any documentation relating to the payment of any income tax, mail and contract mail carrier records, documentation and receipts relating to any safe deposit boxes and keys to safe deposit boxes; documentation and receipts relating to any storage facilities, and any other documents or evidence of financial transactions involving the receipt and disposition of the proceeds of illegal narcotics sales;

5. Records that identify other co-conspirators, including, but not limited to: contact information, call records, telephones/cellphones and the numbers and other data stored within those telephones, and the numbers stored inside those devices, devices capable of recording incoming telephone numbers, and the numbers stored within those devices, records of telephone calls, whether recorded electronically or in writing, notes reflecting telephone, or papers which reflect names, addresses, and telephone numbers of suspected co-conspirators, photographs; and audio or video recordings of conversations, including those made over telephone answering machines;

6. Documents or other records relating to court proceedings involving other co-conspirators, including, but not limited to, charging documents and bail records;

7. Identification documents;

8. Records of travel including, but not limited to, tickets, transportation schedules, passports, automobile rental records, notes and receipts related to travel, and motel/hotel receipts;

9. Indicia of occupancy, residency, rental, control, and/or ownership of property, including photographs, deeds, mortgages, lease agreements, rental receipts, canceled checks, utility, cable, and telephone bills, titles, registration documents, and other documents;

10. All digital content, to include call history, SMS/MMS history, contacts, website search history, videos, photos, content from social media sites, to include Facebook, Facebook messenger, Snapchat, Instagram, WhatsApp and others, and any content not listed which would reveal evidence of the aforementioned violations of federal law.

11. As used above, the terms "records", "information", and "content" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.